**H. F. WALLISER & CO. v. F. W. MAURER & SONS CO.**

(District Court, E. D. Pennsylvania. February 3, 1927.)

No. 3019.

**1. Master and servant ☜62—Employment contract to improve machinery held to give employer right after termination of employment to make additional machines invented by employee during employment.**

Where machinist, who was employed to invent anything pertaining to employer's business, agreed to surrender all claims thereto, and in new agreement contracted to render same services without mentioning surrender of claims, *held*, that employer was entitled to benefit of inventions made during continuance of contract and patented by employee after he left employment, with right to construct additional machines as necessities of its business required.

**2. Patents ☜203—Rights of assignee of patent held no greater than those of patentee.**

Where patentee's former employer was entitled to benefits of invention to extent that its business necessities required, rights of assignee of patent were no greater than those of patentee and were subject to such rights.

In Equity. Patent infringement suit by H. F. Walliser & Co. against the F. W. Maurer & Sons Company. Bill dismissed.

Joshua R. H. Potts, of Philadelphia, Pa., for plaintiff.

A. B. Moulton, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. ·This suit was brought by H. F. Walliser & Co., as assignee of Clarence F' Arnold, for infringement of letters patent No. 1,390,267, for which application was filed November 30, 1920, and patent issued and assignment made September 13, 1921, for a machine for making and applying tufts. After the hearing, one Joseph Chappatte, on December 23, 1926, was substituted as plaintiff and filed a supplemental bill of complaint.

The machine forming the subject-matter of the patent in suit is (1) for making tufts or balls of a tassel-like nature out of a bundle of threads; and (2) for simultaneously attaching a ball to a loop, header, or fringe. One of the issues is raised by the averment of the bill that the plaintiff is the owner of the exclusive right to make, use, and vend the patented invention, and by the defendant's denial that the plaintiff ever became or is now the owner of any exclusive rights whatsoever in, to, or under the letters patent.

It appears from the testimony that Arnold, the inventor, entered the employ of the defendant, F. W. Maurer & Sons Company, in the year 1900, and remained continuously in their employ up to the end of October, 1920. The defendants were engaged in the business of manufacturing trimmings for shades and upholstery goods, rugs, curtain trimming, and edgings. Arnold's duties were those of a general machinist, to invent anything or make anything asked of him. On February 1, 1910, the defendant and Arnold entered into a contract in writing, under which "the party of the second part (Arnold) agrees to build and design anything pertaining to the business of the parties of the first part and surrender all claims or rights in same." On February 12, 1912, a new agreement was entered into setting forth:

"(1) That the said parties of the first part [the defendant] hereby agree to employ the said Clarence F. Arnold for a period of two years from the date hereof, to render to them the same character of services as he has heretofore rendered. (2) ·The party of the second part agrees to render said services during said time, and also to design and build anything advantageous or pertaining to the business of the parties of the first part, which may be discovered or invented by him or which·may be suggested to him."

This contract was to continue from year to year unless either party gave 30 days' notice of intention to terminate. The defendant had been making ball fringe in its factory. The balls were made in a machine known as the Rehfuss machine, and they were attached to the loops of the runner by hand. At the request of the defendant, Arnold undertook to invent a machine to attach the balls to the runners. He made a study of the Rehfuss machine, and finally, about the early part of 1917, he had substantially completed an improvement on that machine, which was finally developed into the machine of the patent in suit. He first built three machines, which were tried and operated successfully, requiring, however, from time to time, modification of their parts, particularly in the shape of the prongs which fastened the wire about the skeins. or bundles of threads to be made into balls, so as to allow greater facility and safety to the operators in slipping the loop, to which the ball was to be attached, over the end of the prong and into the recess thereof, so that, when the wire binding was applied, it would inclose and secure, not only the threads of the ball, but also the thread of the loop attaching the ball to the header of the fringe. Later, the design having been, in his judgment and that of the defendant, perfected, he built three more of the machines, which were installed in an addition to the defendant's factory.

On January 14, 1918, Arnold gave notice to the defendant, under the terms of the contract, of his intention to terminate it on February 28, 1918. He, however, continued in the defendant's service under an increased salary until the latter part of October, 1920, when he left their employ and on November 30, 1920, filed his application for letters patent. He thereupon entered the employ of Walliser & Co. Since Arnold left the defendant's employment and prior to bringing suit, the defendant has had 14 of the patented machines made, and has been and is using them, together with the machines built by Arnold, in its factory.

It is conceded by the plaintiff that the 6 machines built by Arnold and in use prior to his leaving his employment are held and used by the defendant under an implied license growing out of the contract relations between the parties when the machines were built, but it contends that the defendant has, without right or license, built and used, and is using, the 14 later machines in infringement of the Arnold patent. It is not denied that the 14 machines are constructed in accordance with the specifications of the patent

and in substantial likeness to the machines built and installed by Arnold. If, under the facts, the implied license included only the machines actually constructed by Arnold while in the defendant's employ, then a prima facie case of infringement has been established, and it is necessary to go into the other defenses set up in the answer. If, however, the implied license extends to and covers machines built under the Arnold invention by the defendant, then Arnold has not, as against the defendant, the exclusive right in his patent, which he asserts, and the bill must be dismissed.

[1] Coming to the contracts between the parties, it is insisted on the part of the plaintiff that because, under the contract of February 1, 1910, Arnold agreed to design and build anything pertaining to the business of the defendant and to *surrender all claims and rights to the same,* and no surrender of claims or rights is mentioned in the second contract of February 20, 1912, therefore it was the intention of the parties that there should be no obligation on his part to surrender any claims or rights which he might have in what he built and designed for the defendant's business. It is to be noted that Arnold, under the second contract, was to render the same character of services as he had theretofore rendered. Those services included his usual work as machinist, and also his services in designing and building anything advantageous or pertaining to the defendant's business. That is what is included in the first clause as the object of his employment. Under the second clause, Arnold agrees to render such services—that is, such as he had heretofore rendered—"and also to design and build anything advantageous or pertaining to the business of the party of the first part, which may be discovered or invented by him or which may be suggested to him."

While there is no mention in that clause of any claims or rights being surrendered, I think it is clearly the intention of the parties, as disclosed by the contract, and their conduct aids in its interpretation, that whatever he designed and whatever he built, which was advantageous or pertaining to the business of the parties, whether discovered or invented by him, or suggested to him, was to be for the use and benefit of the defendants in the manufacturing business in which they were engaged. It would be an unreasonable narrowing of the construction of the agreement to hold that its terms cover only what was designed and also built by Arnold during the term of his employment. The 14 machines in question were designed by Ar-

nold in the defendant's plant, in Arnold's time, which belonged to the defendant, and with the use in experimenting of the defendant's materials. The machines had been designed, and the earlier ones built, prior to his notice of discontinuance of the agreement. He finished the sixth machine, according to his own statement, on the day he left the defendant's employ. He recognized, therefore, notwithstanding the notice of termination of the contract under which he had been working, his obligation to continue during his employment the work of designing and building these machines. Whether his employment after that date is to be deemed as continuing under the written agreement or under an implied contract is immaterial. He was still employed in designing and building of these particular machines, and whatever he did under his continuing employment was within the same terms, whether express or implied.

The plaintiff's contention is that the defendant thereby acquired merely a shop right in the use of the 6 machines in carrying on its business during the life of the machines, and that its enjoyment of the product of the skill and invention of Arnold was thus limited. With this narrow construction of the contract rights of the parties I cannot agree. It would be unreasonable to say that the defendant cannot use all that it acquired through its employment of Arnold to design anything advantageous or pertaining to its business, and that the advantage derived therefrom was to cease, as far as the use of the design is concerned, at the termination of his employment by them, and that the use and advantage of his work in designing the machines is restricted to those actually built by him during his employment. The law gives it more than that. It gives it the right to a continuing use of the result of his work in designing the machine. What use is the design of the machine, unless, in carrying on its business, the defendant may construct, as its business necessities require, additional machines in accordance with that design?

[2] When Arnold quit the defendant's employ, it was with the apparent intention of applying for a patent upon the invention claimed by him of an improvement on the Rehfuss machine; for the patent was immediately applied for, and he connected himself with the Walliser Company and assigned the patent to it. Whatever rights his assignee obtained under the patent are no greater than Arnold had; and, so far as the plaintiff is concerned, its rights are not exclusive as against the defendant in the use

of the machine since patented. The right of the latter to use, as against Arnold, includes the right to make for use in its business.

The conclusions reached are sustained by the reasoning of Judge Dickinson of this court in Mix v. National Envelope Co. (D. C.) 244 F. 822. See, also, Withington-Cooley Mfg. Co. v. Kinney (C. C. A.) 68 F. 500; Beecroft & Blackman v. Rooney (D. C.) 268 F. 545; Dunkley Co. v. California Packing Corp. (C. C. A.) 277 F. 996; McKinnon Chain Co. v. American Chain Co. (D. C.) 259 F. 873; Standard Parts Co. v. Peck, 264 U. S. 52, 44 S. Ct. 239, 68 L. Ed. 560, 32 A. L. R. 1033.

The plaintiff having failed to sustain as against the defendant an exclusive right to the patented invention, the bill is dismissed upon that ground, at plaintiff's cost.