## FLANNERY BOLT CO. v. FLANNERY.
### No. 5994.

Circuit Court of Appeals, Third Circuit.
Sept. 15, 1936.
Rehearing Denied Oct. 26, 1936.

H. F. Stambaugh, Ralph H. Demmler, and Watson & Freeman, all of Pittsburgh, Pa., for appellant.

Roy G. Bostwick, Earl F. Reed, John E. Laughlin, Jr., James A. Bell, and Thorp, Bostwick, Reed & Armstrong, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and DICKINSON, District Judge.

DAVIS, Circuit Judge.

This is an appeal from a decree of the District Court which directed the defendant appellant to pay to the plaintiff the sum of $1,111,805.16 with interest from the date of the decree at 6 per cent. per annum and to execute a certain patent application, prepared by W. H. Parmelee, Esq., for "Staybolt Assemblages" with all his right, title and interest in and to the same. The decree further adjudged the plaintiff to be entitled to a nonexclusive, nonassignable shop right, to make, use, and sell certain devices as exemplified in a description signed by G. R. Greenslade and accompanying blue prints.

The $1,111,805.16 is the aggregate amount which the learned District Judge found that the defendant, while president of the plaintiff company, had wrongfully converted and appropriated to his own personal use.

We think that the evidence which is rather voluminous abundantly supports his findings of fact, but in two instances he misapplied the law.

In finding No. 18 he found that the defendant drew in bonuses $36,066.14 under certain resolutions passed by the board of directors. This he did, but whether or not he was entitled to it as a conclusion of law, for there is no dispute about the facts, depends upon the correct interpretation of the resolutions passed by the board when there was no suit pending, and not upon testimony wherein credibility of witnesses had to be determined by the judge who saw them on the witness stand. Consequently,

we are in the same position as the trial court was to pass upon the question of law.

■ The first resolution fixing his salary was adopted on December 29, 1926, as follows: "Upon motion of E. McCormick, duly seconded, it was—Resolved that the salary of the president be fixed at $2,000 per month, and a commission of one-third of a cent for each and every part of a rigid and flexible bolt assemblage."

The word "salary" means the "recompense or consideration paid, to a person at regular intervals for services." Webster. The salary at that time consisted of $2,000 per month and a commission of one-third of a cent for each and every part of a rigid and flexible bolt assemblage. In addition to the commissions, the salary was raised to $3,000 per month and afterward to $50,000 per year. The words in the resolution "$2,000 and a commission of one-third of a cent for each and every part of a rigid and flexible bolt assemblage" are in apposition to the word "salary." In other words, the salary included the commission as well as the $2,000, or the amount fixed later.

Thereafter on February 26, 1928, the board of directors passed the following resolution: "Upon motion duly seconded, a bonus was declared in favor of the president of 50% of his total salary for the year 1928."

To make sure that the "bonus" should include and be calculated upon not only the definite amount of money expressly mentioned, but also the commissions, the board took pains to use the word "total," which included everything, the entire "recompense or consideration" which the president received. We think that the learned trial judge misconstrued this resolution.

He found, in finding of fact No. 23, that the defendant and not his brother-in-law, Ralph Friday, was the inventor of what was known as the "Shure Tell-Tale Bolt," which is a flexible bolt with an opening throughout its length in which is inserted an insulated conductor, attached at its inner end to the head of the bolt, for the purpose of detecting a defect or break in the bolt by means of an electrical testing circuit. In October, 1932, Friday filed an application in the Patent Office for a patent for this invention. Having found that the defendant was the inventor of this bolt, in the fifth paragraph of the decree, the court adjudged and decreed that: "The plaintiff is entitled to a non-exclusive, non-assignable, and free license, commonly known as a shop right, to make, use, and sell the devices as exemplified in the description signed by G. R. Greenslade and accompanying blueprint and identified as Plaintiff's Exhibits 25 and 25a, respectively, and described in Findings of Fact, paragraph 22, made in this cause."

■■ If the defendant as a fact did invent the so-called "Shure Tell-Tale Bolt," while he was the president and while his time was paid for by the plaintiff corporation, at whose risk, cost, and expense the entire development and reduction to practice was made, it would, as a matter of law, ordinarily be entitled to a shop right (United States v. Dubilier Condenser Corporation, 289 U.S. 178, 53 S.Ct. 554, 77 L.Ed. 1114, 85 A.L.R. 1488), which under the circumstances of this case carried with it the right to sell the bolt which it had manufactured in accordance with the invention.

The business of the plaintiff is the manufacturing of staybolts for sale. This the defendant knew. The only use of a shop right to the plaintiff was the right to sell the staybolts which it had manufactured in accordance with the invention and this right equity gave it. The scope of a shop right must be determined from the nature of the employer's business, the character of the invention involved, the circumstances which created it and the relation, conduct, and intention of the parties. Withington-Cooley Manufacturing Co. v. Kinney (C.C.A.) 68 F. 500; H. F. Walliser & Co. v. F. W. Maurer & Sons Co. (D.C.) 17 F.(2d) 122, 125; Tin Decorating Co. v. Metal Package Corporation (D.C.) 29 F. (2d) 1006, 1007; Neon Signal Devices, Inc., v. Alpha-Claude Neon Corp. (D.C.) 54 F.(2d) 793, 794.

■ The evidence in the record as made in this case shows that the defendant and not Friday was the inventor, and as such has the right to make, use and sell the staybolts in question when this right is properly established with Friday as a party before the court. The difficulty with the conclusion of law and the decree based thereon is that it takes the property of one who is not a party to the record and who refused to become such. Friday has never had his day in court, and not being a party, he cannot be bound, under the circumstances of this case, by the decree. The appellee should have made him a party and proceeded against him for the rights to which

the evidence in this record shows it was entitled. If a patent be issued to Friday and if he should sue the plaintiff for making and selling the device embracing the invention, it could defend on the ground that Flannery was the inventor, and in consequence the patent is invalid.

We have examined and considered all the assignments of error and think that this was a case in which equity had jurisdiction, that the evidence supports the facts found by the learned District Judge, and that his conclusion of law (except in the two instances mentioned) logically follow from his findings.

The decree, as modified in accordance with this opinion, is, for the reasons set forth in the opinion of the District Court, affirmed.