## SUN INSURANCE OFFICE LIMITED OF LONDON v. BE-MAC TRANSPORT CO., Inc.

### No. 12300.

Circuit Court of Appeals, Eighth Circuit.

Dec. 7, 1942.

Rehearing Denied Dec. 29, 1942.

J. H. Cunningham, Jr., of St. Louis, Mo. (Chasnoff, Willson & Cunningham, of St. Louis, Mo., and John W. Fuson, of St. Joseph, Mo., on the brief), for appellant.

Max Sigoloff, of St. Louis, Mo., for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken to reverse a judgment for $3,370.07 rendered in favor of plaintiff Be-Mac Transport Company, Inc., against the defendant insurance corporation for a loss sustained by plaintiff found to be covered by an insurance policy issued to it by defendant. The judgment also awarded $737 for vexatious delay and attorney's fees. The case was submitted to the court (without a jury) upon an agreed statement of the facts and certain evidence in documentary form, and the contention of the insurance company was that the insurance policy sued on did not insure against the loss sustained by the plaintiff. Its appeal is predicated on the same contention. Although the trial court made findings of fact appearing in the record, it was not called upon to pass on the credibility of any witness before it and the appeal presents no reason for the application of Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to such findings. There was no conflict in evidence and the appeal imposes on this court the duty of ruling upon the questions of law presented. United States v. Mitchell, 8 Cir., 104 F.2d 343; Flannery Bolt Co. v. Flannery, 3 Cir., 86 F.2d 43.

It appears that at all relevant times in 1937 the plaintiff was operating as a common carrier by motor vehicle in interstate commerce pursuant to an application filed with the Interstate Commerce Commission under the Grandfather Clause of the Federal Motor Carrier Act, 49 U.S.C.A. § 306, and the insurance policy sued on in the action was in full force and effect, having been duly issued by defendant to plaintiff, the premiums being paid. By its terms the policy covered "the legal liability of the assured as a carrier * * * for direct loss or damages for perils insured against on shipments of lawful goods and/or merchandise of every description while in the custody of the assured, for and during transportation by the motor trucks * * * owned and/or operated and/or contracted for by the assured."

"Perils insured against" were enumerated in the policy and a further provision read: "This policy also covers * * * against the risk of theft * * *. Dishonesty by the assured, agents or employees whether occurring during the hours of employment or otherwise, is also excluded."

In the course of its business as a common carrier under the Federal Motor Carrier Act, the plaintiff contracted to transport a shipment of poultry from Shawnee, Oklahoma, to New York, and a shipment of butter from St. Louis to New York. It did not have a truck of its own available to effect the transportation from St. Louis to New York but arranged with one Paul Birkinbine, who owned a truck, to transport the two shipments from St. Louis to New York. It agreed to pay him a flat sum for the haul and advanced him a portion of the money, agreeing to pay the balance after he had completed delivery. Birkinbine did not have a permit as a carrier or other authority from the Interstate Commerce Commission, but, as he stated, operated "under the plates of whoever I haul for." The property which plaintiff had contracted to transport to New York was delivered by it to Birkinbine in St. Louis. He had a helper with him at the time by the name of Chester C. Claus, and they commenced the transporta-

tion in Birkinbine's truck. Birkinbine stayed with the load as far as Indianapolis and then sent Claus on with it. Claus on reaching New York state, wrongfully disposed of the cargo and was subsequently convicted under federal law of stealing it. Plaintiff accounted to the shippers for the value and recouped part of it from persons who had received the stolen goods. The balance of the value is the amount for which plaintiff obtained judgment against the insurance company.

■ The insurance company's defense is that the policy which it issued to the plaintiff did not insure against the dishonesty of the helper Chester C. Claus who stole the cargo entrusted to him. It contends that on the facts shown said Claus must be deemed an agent in the transportation undertaken by the Be-Mac company and that the policy did not cover his dishonesty which caused the loss. It also contends that its insurance against the risks and perils of plaintiff's business as a common carrier by motor vehicle under the Federal Motor Carrier Act must be read in the light of the provisions of the Act and the Rulings promulgated thereunder. Plaintiff's lawful authority to contract as it did with the shippers of the poultry and butter to transport the same in interstate commerce by motor vehicle over the highways from points in Oklahoma and Missouri to New York derived from 49 U.S.C.A. § 306. Plaintiff not only assumed responsibility for the entire transportation by its contract with the shippers, but the Act and Rulings of the Administrator forbade it to make an interchange of the shipment with motor vehicle carriers designated contract carriers under the Act. Administrator's Ruling No. 13, Bureau of Motor Carriers, August 21, 1936.[1] E. M. Holmes et al., 8 M.C.C. 391; H. N. Gordon, 10 M.C.C. 435; Joseph Budrack, 27 M.C.C. 287. Such being the obligation and responsibility of the plaintiff in respect to the shipment involved when it undertook to carry out the same by procuring a truckman owning his own truck and having his own helper to transport the cargo under the Interstate Commerce Commission permits issued to plaintiff, such truckman and his helper must be regarded as "agents" within the intendment of that provision of the policy which excludes "dishonesty by the assured, agents or employees."

In view of the volume of interstate commerce by motor vehicles and the great extent to which the through shipments are effected by arrangements similar to those made in this case, it is apparent that the question so presented is important. There is no argument that the policy's exclusion of insurance against dishonesty of the assured and agents is unreasonable as it is recognized that fidelity insurance is in a distinct and separate insurance field. But it is disputed that the truckman's helper who stole the cargo in this case was an agent in respect to the custody and transportation of it within the policy provision.

■ Where a common carrier by rail undertakes for itself to perform an entire service of transportation from point of origin to destination, it has long been settled that all those employed by it to carry out the transportation are to be deemed its agents, Bank of Kentucky v. Adams Express Co., 93 U.S. 174, 23 L.Ed. 872; Atlantic Coast Line R. Co. v. Riverside Mills, 219 U.S. 186, 31 S.Ct. 164, 55 L.Ed. 167, 31 L.R.A.,N.S., 7; Missouri Pacific R. Co. v. Reynolds-Davis Grocery Co., 268 U.S. 366, 45 S.Ct. 516, 69 L.Ed. 1000; United States v. Brooklyn Eastern Dist. Terminal, 249 U.S. 296, 39 S.Ct. 283, 63 L.Ed. 613, 6 A.L.R. 527; United States v. Union Pacific R. Co., 8 Cir., 213 F. 332; Vernon v. American Railway Exp. Co., Mo.App., 222 S.W. 913; Williamson-Inman Co., Inc., v. Nashville, C. & St. L. R., 44 Ga.App. 129, 160 S.E. 687, and its common law carrier liability will extend over the entire route, but we do not find that the question has been directly mooted in the courts in respect to common carriers by motor vehicles. There is, however, no sound reason why this common law principle so firmly established as to common carriers by railroad should not be equally controlling where the contract for the entire transportation is made by common carriers by motor vehicle. Though the Federal Motor Carriers Act does not contain provisions equivalent to those of the Carmack Amendment, 49 U.S.C.A. § 20 (11) (12), a somewhat analogous legislative result is

[1] "Question: May contract carrier interchange interstate shipments with common carriers?

"Answer: If interstate shipments are interchanged with common carriers, the transportation is a common carrier service; and a contract carrier may not engage in such interchange without changing his status to that of a common carrier."

brought about by the Act and Rulings which prohibit common carriers from engaging in interstate carriage of goods on the highways by motor vehicle without certificate of the Commission and declare that where interstate shipments are interchanged with common carriers "the transportation is a common carrier service; and a contract carrier may not engage in such interchange without changing his status to that of a common carrier." At least it is clear that there is nothing in the Act or Rulings to prevent the application of the law settled as to common carriers in interstate commerce by rail from being applied to such carriers by motor vehicle.[2] It follows that when the plaintiff in this case, in order to carry out its contract with its shippers, entrusted the custody of the shipments in question to the truckman Birkinbine and his helper Claus, it constituted them its agents to complete the transportation which it was obligated to consummate and for which it had assumed responsibility. As the insurance policy expressly excluded insurance of the fidelity of the assured and agents from its coverage, the insurance company was not liable for the dishonesty of Claus which caused plaintiff's loss.

Plaintiff contended in the trial court that under the arrangements it made with the truckman Birkinbine he became an independent contractor, and that when it delivered the goods to him it parted with all control and direction of the operation of transporting them to New York. Whether or not it should be inferred from the stipulation on which the case was submitted that such surrender of control and direction was so complete was disputed and the trial court made findings to support the contention of the plaintiff. But the contention and the findings can not benefit the plaintiff in its action on the insurance policy. The policy by its express terms covers only the legal liability of the assured as a carrier for loss on shipments of goods "while in the custody of the assured." If it could be inferred that the plaintiff, in disregard of its obligation and responsibility to deliver the goods to the consignee, had in fact completely surrendered the goods to someone else so that the goods

had ceased to be and were not in its custody at the time of the loss, then the loss would not be covered by the policy.

We conclude that the judgment in favor of the plaintiff was erroneous and that on the stipulation of the parties the defendant is entitled to have judgment in its favor. The judgment is reversed and the case remanded with direction to dismiss the action.

---

[2] In Tubize Chattillon Corporation v. White Transportation Company, D.C., 6 F.Supp. 15, the issue between the shipper and carriers by motor vehicle was whether the carriers had in fact contracted for the entire transportation. The court entertained no doubt that the agency of the connecting carrier existed if such was the contract.