328

James G. Cahill et al., as Executors of William H. Roberts, Deceased, Doing Business under the Name of Melvina Can Company, Appellants, v. John E. Regan, Respondent.

Second Department, July 15, 1957.

*Charles B. McGroddy, Jr.,* for appellants.

*Sidney Schreiberg* and *Samuel Abráhams* for respondent.

UGHETTA, J. It will be convenient to refer to the appellants as the " employer " and to the respondent as the " employee." The action is by the employer for a judgment declaring it to be the owner of United States Patent No. 2,602,565 issued to the employee, to direct an assignment of said patent accordingly, and for " other further and different relief ".

Few of the facts are seriously disputed. The patent covers a reusable screw-top can. The device was developed by the employee in the course of his employment and at the employer's expense. It was manufactured and sold by the employer with the employee's knowledge, under the employee's direction, and without any claim for special compensation therefor while the employer-employee relationship continued. After the employer had manufactured and sold the device in quantity over a period of more than a year, the employee applied for a patent without the employer's knowledge. Several months later the employee quit his job. Subsequently the patent was issued to him.

After trial the Special Term held that the employee was employed solely as manager or superintendent of a factory, that he was not employed to invent, and that, absent an express agreement to assign his invention to the employer, there was no duty to do so. Judgment was granted dismissing the employer's complaint.

Fundamentally, an invention belongs to the inventor, and his ownership persists in the absence of an agreement to assign (*General Time Corp.* v. *Padua Alarm Systems*, 199 F. 2d 351, 355). The mere fact that the inventor is employed by another and makes an invention during such employment does not change these rules. (*Hapgood* v. *Hewitt*, 119 U. S. 226.) Even employment to devise methods of manufacture does not of itself require an assignment of resulting inventions to the employer. (*United States* v. *Dubilier Condenser Corp.*, 289 U. S. 178.)

On the other hand, if the employee is hired to invent, or is assigned the duty of devoting his efforts to a particular problem, a resulting invention belongs to the employer. (*Marshall* v. *Colgate-Palmolive-Peet Co.*, 175 F. 2d 215, 217.) The general duties of the employee are immaterial. If he be assigned to

experimental work and if he be paid for such work, it is his duty to disclose to the employer the results of his experiments, and the accomplishment belongs to the employer. (*Houghton* v. *United States,* 23 F. 2d 386, 390.) A different result might follow if the employee be an outside salesman, not employed in the factory. In such case, if he conceives an idea outside his hours of employment, and does not use the employer's tools and materials in developing the invention, the accomplishments are his. (*McNamara* v. *Powell,* 256 App. Div. 554, 558.)

In the present case, it must be found that the employee was hired to be manager and superintendent of the employer's can factory. He entered upon and performed such duties. After more than a year of such performance the employee conceived the idea for a reusable can. This followed a conversation with officials of the Navy Department in Washington, D. C., where he had gone in connection with the employer's business. From his own testimony it appears that, in discussing the question of a reusable can, he told the employer he thought he had an answer to the question, and the employer said " All right, go ahead." The employee made sketches of a can, and had professional drawings made at the employer's expense. He made sample cans in the employer's shop, parts for which were made by outside factories at the employer's expense. Eventually dies were made also at the employer's expense. The dies were attached to the employer's machines and under the employee's direction cans were produced and sold by the employer. During all such times the employee was paid his regular salary. The cans thus conceived, manufactured, and sold, were substantially similar to the can upon which the patent was subsequently issued to the employee.

There is no evidence of any agreement under which the employee was to receive royalties or other special compensation from the employer for the manufacture and sale of the cans. Concededly, the employee continued his employment for more than a year during which the employer manufactured and sold thousands of reusable cans under the employee's direction and supervision. The employee left the employment in the Fall of 1950. A few months prior to leaving he had, without the employer's knowledge, filed his application for a patent on the reusable can. The patent was issued on July 8, 1952. The employer first learned of the patent in 1953.

On the foregoing facts a close question is presented as to whether the invention and the patent are the property of the employer. Resolution of this question depends largely upon the testimony of the employee himself. Admittedly, he discussed

the question of a reusable can with the employer, who told him to go ahead. He did so, and the invention resulted. We are constrained to interpret the evidence so that the invention, insofar as it is a mental concept, was in full bloom at the time the employee spoke of it to the employer and the employer's directions to " Go ahead " referred to the work of making a physical embodiment of the mental concept, and that this was not a case of an employee being set to work upon a particular task which resulted in an invention.

An invention has been defined as consisting of two parts: a mental concept plus an embodiment, such as a physical device. If the mental concept is that of an employee (not expressly paid to invent) and he merely uses the employer's time, money, and materials to produce the physical embodiment of the invention, the courts are reluctant to hold that the invention is the absolute property of the employer. That seems to be the force of the statements by Mr. Justice ROBERTS in the *Dubilier* case (*United States* v. *Dubilier Condenser Corp.*, 289 U. S. 178, 188, *supra*), as follows: " The reluctance of courts to imply or infer an agreement by the employee to assign his patent is due to a recognition of the peculiar nature of the act of invention, which consists neither in finding out the laws of nature, nor in fruitful research as to the operation of natural laws, but in discovering how those laws may be utilized or applied for some beneficial purpose, by a process, a device or a machine. It is the result of an inventive act, the birth of an idea and its reduction to practice; the product of original thought; a concept demonstrated to be true by practical application or embodiment in tangible form." .

Our interpretation of the present record is that the employee had the invention fully in mind before he disclosed it to his employer and that the employer's direction to " Go ahead " meant to use the employer's facilities and money to produce a physical embodiment of the invention, an actual reusable can. The question is close, dependent not on a choice of conflicting testimony but on an interpretation of undisputed evidence given mostly by the employee himself. We are constrained to abide by the rule that courts are reluctant to find that by implication an agreement was made to give the invention to the employer. Accordingly, we agree with the learned Special Term insofar as it denied the employer's prayer for ownership of the patent.

We turn now to another material question on the appeal. The employer contends that if the evidence fails to establish ownership of the patent nevertheless the evidence establishes the right to freely use, manufacture and sell the device inasmuch as it

appears without dispute that the physical device, the embodiment of the invention, was developed and perfected at the employer's expense while the employee was working for the employer, and that the device was manufactured and sold by the employer with the employee's consent. This claim is asserted under the doctrine of "implied license" or, as more specifically termed when employer and employee are concerned, "shop-right". (*United States* v. *Dubilier Condenser Corp.,* 289 U. S. 178, 188-189, *supra; Lane & Bodley Co.* v. *Locke,* 150 U. S. 193.)

At the trial herein the Special Term declined to pass on the matter of shop-right, on the ground that that relief was not asked for in the prayer in the complaint. The holding seems to have been influenced by the provision in rule 211 of the Rules of Civil Practice that "the precise rights and other legal relations of which a declaration is requested" shall be specified. The complaint prays for a declaration that the employer is the owner of the patent, that an assignment be directed, and for further and different relief as may be just and proper. In addition, the complaint expressly alleges the facts of employment and the development of the device during the employment at the employer's expense. The matter of shop-right should have been adjudicated. It would be strange if a court of equity did not have the power under these circumstances to adjudicate with respect to a lesser interest than the full ownership prayed for. That is familiar practice. (*Rockland Light & Power Co.* v. *City of New York,* 289 N. Y. 45; *Queen* v. *Benesch,* 191 App. Div. 83.) This court should make the judgment which should have been made below. (Civ. Prac. Act, § 584, subd. 2.)

A shop-right is a form of implied license to freely use the subject of a patent. It is not a statutory right but is found by the court on particular facts. (*Gate-Way* v. *Hillgren,* 82 F. Supp. 546, affd. 181 F. 2d 1010.) It is an application of equitable principles such that if the employee uses his employer's time, money, tools, and materials to produce a useful result, it is only fair and equitable that the employer should be entitled to use the product of his own property and to duplicate it in his business. It is no anomaly to find on the same evidence that the employer is not the owner of the invention and the patent but is entitled to a shop-right in the patented invention. (*United States* v. *Dubilier Condenser Corp.,* 289 U. S. 178, 188-189, *supra.*) The employer's license is nonexclusive and except for that burden the employee who owns the patent maintains the usual rights and benefits of a patentee.

In the present case the evidence shows conclusively that the invention was developed at the employer's expense and with the employer's materials, tools and facilities during a period when the employee received his regular salary and he himself put the device into production and sale on behalf of the employer without claim for additional or special compensation. It is our opinion, therefore, that the employer is entitled to freely use, manufacture and sell the invention described in the patent. (*Schmidt* v. *Central Foundry Co.*, 218 F. 466; *Flannery Bolt Co.* v. *Flannery*, 86 F. 2d 43.)

Finally, it is claimed by the employee that any and all rights or claims of the employer in connection with the invention or the patent were extinguished by an instrument of general release. It appears that, after he left his employment, there was an action between him and the employer on a matter not related to the invention or the patent in suit and that such action was settled and general releases were exchanged. This release was pleaded in the answer herein as a defense, but no adjudication thereon was made at the trial. The release instrument cannot be held to have released the employer's claim to ownership of the patent. It was executed prior to the time of the issuance of the patent and at a time when the employer had no knowledge that an application for a patent had been made by the employee. The evidence shows that the circumstances under which the release was delivered do not permit its being treated as including all possible claims. (*Simon* v. *Simon*, 274 App. Div. 447; *Giannini* v. *Sheeran*, 276 App. Div. 760.) More than that, the release was a quitclaim, not a conveyance or assignment of existing property rights.

The judgment should be modified on the law and the facts by striking from the last paragraph thereof everything following " 2nd ", and by substituting in place thereof a provision that the appellants are entitled freely to use, manufacture, and sell the invention described in United States Patent No. 2,602,565, issued July 8, 1952 to John E. Regan. As so modified, the judgment should be affirmed, without costs. The findings of fact insofar as they may be inconsistent herewith should be reversed and new findings should be made as indicated herein.

WENZEL, J. (dissenting). I dissent and vote to reverse and to grant judgment in favor of the appellants for the specific relief sought.

It lay within the employee's duties to devise cans to meet the requirements of prospective customers, as is usually necessary in the container business. In the instance before us, the employee

did so on his employer's time, with his employer's money and with his employer's assistance. It was the employer who paid all the expenses of developing the invention.

Nolan, P. J., Beldock and Kleinfeld, JJ., concur with Ughetta, J.; Wenzel, J., dissents and votes to reverse and to grant judgment in favor of the appellants for the specific relief sought, with memorandum.

Judgment modified on the law and the facts by striking from the last paragraph thereof everything following " 2nd ", and by substituting in place thereof a provision that the appellants are entitled freely to use, manufacture, and sell the invention described in United States Patent No. 2,602,565, issued July 8, 1952 to John E. Regan. As so modified, judgment affirmed, without costs. Findings of fact insofar as they may be inconsistent with the opinion herein are reversed and new findings are made as indicated therein.