Ben WILLIAMSON, Jr., and Fannie G. Williamson, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 14846.

United States Court of Appeals
Sixth Circuit.

Nov. 26, 1962.

———◆———

Robert K. Emerson, Huntington, W. Va. (Porter M. Gray, Ashland, Ky., on the brief; Campbell, McNeer, Woods & Bagley, Huntington, W. Va., of counsel), for appellants.

David I. Granger, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Dept. of Justice, Washington, D. C., Bernard T. Moynahan, Jr., U. S. Atty., Lexington, Ky., on the brief), for appellee.

Before O'SULLIVAN, Circuit Judge, FREEMAN and TAYLOR, District Judges.

ROBERT L. TAYLOR, District Judge.

This is an appeal from a judgment of the District Court dismissing the complaint of Ben Williamson, Jr. and wife, Fannie G. Williamson. The action was filed to recover income taxes for the years 1954 and 1955 in the amounts of $4,352.72 and $15,878.90, with interest, on the ground that such taxes were illegally assessed.

Fannie G. Williamson joined as plaintiff because she signed the income tax reports for those years. Her husband, Ben Williamson, Jr., is the real party in interest and will be referred to as the taxpayer.

Inland Gas Corporation and Kentucky Fuel Gas Corporation were producers, transporters and sellers of natural gas. They were incorporated in 1927 and 1928. American Fuel & Power Company was organized in 1928 for the purpose of acquiring the capital stock of Inland and Kentucky. The three corporations became insolvent in 1930 and defaulted on their obligations. They were placed in equity receiverships in the United States District Court for the Eastern District of Kentucky. Later, their properties were administered under Chapter 77B of the Bankruptcy Act and finally as a Chapter 10 corporate reorganization under the Bankruptcy Act.

Taxpayer was appointed as co-trustee to administer the properties of the three corporations on May 5, 1937 and served as such until July 1, 1937 when he was appointed sole trustee of Inland and Kentucky, and has continued to serve in that capacity.

At the time of his appointment, there was an understanding between him and the Court that he would be allowed a maximum drawing account of $1,000 per month as the estates of the debtors could not afford to pay in excess of that amount. It was taxpayer's understanding and that of the Court that compensation would not be finally determined until such time as the reorganization of the debtors had been concluded. It was the further understanding of the taxpayer and the District Court that as the financial affairs of the debtors improved, taxpayer could apply from time to time for ad interim allowances to cover partial payment for all services previously ren-

894

dered by him as trustee and that the amount previously awarded by the Court as ad interim allowances would be charged against the final allowance to be awarded at the conclusion of the reorganization proceedings.

Taxpayer sought to resign as trustee in 1941 due to the illness of his father and for personal business reasons, but he was prevailed upon by the District Judge to continue. At that time, he desired to know the amount of his compensation for each year and the Court advised him, in substance, that he would be compensated for each year. The Court explained to him that the assets of the estate did not justify compensation in excess of the maximum monthly drawing account.

Ad interim allowances were made from 1946 through 1952 in various amounts, totaling a little more than $200,000. On December 27, 1954, he was paid an ad interim allowance of $26,000 and on December 5, 1955, an ad interim allowance of $83,000, both allowances covering the period from July 1, 1939 to January 1, 1955.

The District Director of Internal Revenue determined that these sums did not constitute "back pay" within the meaning of 1303 of the Internal Revenue Code of 1954 and assessed deficiencies and penalties against taxpayer in the sum of $3,979.56 for 1954, and $14,843.69 for 1955. On August 2, 1957, taxpayer paid the deficiencies and penalties under protest and thereafter made claims for refunds which were rejected.

█ The sole issue in the case is whether taxpayer can treat the 1954 and 1955 ad interim allowances as back pay under the provisions of Section 1303 of the Internal Revenue Code of 1954. Taxpayer concedes that he must show that he was an employee within the meaning of the statute in order to come within it.

The pertinent part of the statute is as follows:

"(a) Limitation on tax.—If the amount of the back pay received or accrued by an individual during the taxable year exceeds 15 percent of the gross income of the individual for such year, the part of the tax attributable to the inclusion of such back pay in gross income for the taxable year shall not be greater than the aggregate of the increases in the taxes which would have resulted from the inclusion of the respective portions of such back pay in gross income for the taxable years to which such portions are respectively attributable, as determined under regulations prescribed by the Secretary or his delegate.

"(b) Definition of back pay.— For purposes of this section, the term 'back pay' means amounts includible in gross income under this subtitle which are one of the following—

"(1) Remuneration, including wages, salaries, retirement pay, and other similar compensation, which is received or accrued during the taxable year *by an employee for services performed before the taxable year for his employer* and which would have been paid before the taxable year except for the intervention of one of the following events:

\* \* \* \* \*

"(B) dispute as to the liability of the *employer* to pay such remuneration, which is determined after the commencement of court proceedings;

\* \* \* \* \*

"(D) any other event determined to be similar in nature under regulations prescribed by the Secretary or his delegate.

"(2) Wages or salaries which are received or accrued during the taxable year *by an employee for services performed before the taxable year for his employer* and which constitute retroactive wage or salary increases ordered, recommended, or approved by any Federal or State agency, and made

retroactive to any period before the taxable year. (Emphasis added.) * * * "

The District Judge ruled that the proper determination of the issue depended upon the correct definition of the term "employee" as used in the statute. He was of the opinion that taxpayer was not an employee within the meaning of the statute. He was further of the opinion that this Court ruled in the case of Scofield's Estate v. C. I. R. (6 Cir., 1959), 266 F.2d 154, that a trustee was not an employee of a trust and that the decision in that case was controlling of the issue in this case. That case involved a private trust that was established in 1917. In 1935, the grandson of the grantor discovered that trust funds had been misappropriated by his trustee-uncle and another uncle. The grandson refused to consent to a new and larger mortgage on the trust property. This refusal and his discovery of the misappropriation was the cause of a suit by the mortgagee, the resignation of the trustee and the appointment of the grandson as successor trustee. The new trustee effected a settlement of the mortgagee suit, brought suit against his two uncles and prosecuted actions against the Cleveland Trust Company and a number of other defendants, in addition to overseeing the operation of the office building which was the corpus of the trust. The new trustee claimed that he could properly allocate the compensation that was paid to him in the years 1946, 1947 and 1948 for services rendered from 1934 to 1947 under the provisions of Section 107(d) of the Internal Revenue Code of 1939, which is the predecessor of Section 1303 of the Internal Revenue Code of 1954. This Court held "that the language of the statute is clear and controlling; that the 'back pay' provisions, applicable to an employee, do not apply to the trustee; and that the trustee, therefore, is not entitled to their benefits." Further, "A trustee is not an employee of a trust. * * * He is not an agent of the trust. It is the authority to enter into contracts which shall bind another that is the distinguishing characteristic of agency."

Taxpayer insists that there are valid distinctions between the status of a trustee of a private trust and a trustee under Chapter 10 of the Bankruptcy Act, and that because of these distinctions, the decision in the Scofield case is not controlling of this case. The distinctions pointed out are that a trustee of a private trust is appointed by a private instrument without the intervention of a court order while a Chapter 10 trustee is appointed by the Court under Section 156 of the Bankruptcy Act. 11 U.S.C. § 556. The powers of a private trust are governed by the instrument creating the trust while the powers of a Chapter 10 trust are governed by the provisions of Chapter 10 of the Bankruptcy Act. and can only be discharged if authorized by the judge in the reorganization court. The trustee of a private trust obtains legal title and possession of the trust property. Title and possession of the assets of a corporate debtor is vested in the Chapter 10 trustee, but the trustee cannot sell, lease or dispose of the property without the approval of the court. 11 U.S.C. § 516(3).

The trustee of a private trust is the embodiment of the trust itself and unless limited by the trust instrument, the trustee is personally liable on his contract, or for his tort. The contracts of a Chapter 10 trustee, like the contracts of a receiver, are the contracts of the court. Hence, the contracts and negligence of a Chapter 10 trustee are official and any judgments against him are payable out of the estate of the debtor. A private trustee cannot be an agent of the trust because the trustee has no principal and is bound by his contracts. A Chapter 10 trustee is not personally bound on contracts made in behalf of the estate of the corporate debtor. Since the assets of the corporate debtor are subject to the contract executed by the Chapter 10 trustee, it follows that there must be a legal entity apart and distinct from the Chap-

ter 10 trustee. The entity is the estate of the corporate debtor and is controlled by the reorganization judge.

This Court is of the opinion that whatever the distinctions between a private trustee and a Chapter 10 trustee, they do not render a Chapter 10 trustee an employee under Section 1303.

■ A trustee in bankruptcy occupies a special fiduciary position. He does not stand merely in the status of the debtor as would an employee officer. "The (Bankruptcy) Act gives the trustee extraordinary powers to assert claims against property both in the possession of the reorganization court and in the hands of third persons in cases where the debtor would be estopped to act and, in some cases, even where creditors could not succeed." 6 Collier on Bankruptcy (14th ed.), par. 8.02, p. 2419.

In Cromelin v. United States, 177 F.2d 275 (C.A.5), plaintiff sued the United States under the Federal Tort Claims Act for damages from the alleged misfeasance, malfeasance, and nonfeasance of the judge and the trustee in bankruptcy in connection with a reorganization under Chapter 10 of the Bankruptcy Act. The Court, in affirming the action of the district judge in dismissing the suit, held that the trustee is an officer of the court and not an agent or employee of the United States, as is a receiver in a federal court. See Callaghan, Receiver v. Reconstruction Finance Corp., 297 U.S. 464, 56 S.Ct. 519, 80 L.Ed. 804; Imperial Assurance Co. v. Livingston, 49 F.2d 745 (C.A.8).

In In re Park Brewing Co., 48 F.Supp. 750 (D.C.W.D.Mich.N.D.), the Court held that a trustee in a bankruptcy reorganization proceeding was an officer of the bankruptcy court and not an employee of the bankrupt within the meaning of the Michigan Unemployment Compensation Act.

Bowersock Mills and Power Co. v. Joyce, 101 F.2d 1000 (C.A.8), involved an equity receivership proceeding in which the court held that the receiver was not an employee of either party to the litigation but was an officer of the court and acting for the court.

Taxpayer insists that the word "employee" has no precise meaning and its application depends upon the facts and circumstances of the case; that dictionary definitions may be looked to, but that the most reliable test is whether the person is subject to the control of another as to the results to be accomplished by the work and the means used to accomplish such work. Taxpayer urges that he was at all times subject to the control of the judge both as to the means and results that were to be accomplished by his work.

■ Chapter 10 of the Bankruptcy Act gives the district judge broad authority over the trustee and the property of the bankrupt, but such powers do not make the trustee the employee of the judge or enable the trustee to bind the judge personally in transacting business for the debtor. The judge would not be liable either as an employer or principal as the relationship of employee and employer or agent and principal does not exist between the trustee (taxpayer) and the judge.

Taxpayer is not an employee of the debtor corporations or the debtor's estate.

■ Neither the debtor corporations nor the debtor's estate had any control over the trustee either as to the results of his work or the means used to accomplish such work. When the Court approved the petitions to reorganize, the stockholders and officers of the corporation ceased to function, except to attend meetings called by the Court to discuss problems that usually arise in Chapter 10 proceedings.

■ We are of the opinion that the decision in Scofield's Estate v. C. I. R., supra, settles the question that the trustee was not the agent of the debtor corporations or the debtor's estate.

*Other Requirements of Section 1303*

Defendant insists that taxpayer failed to bring himself within the other re-

quirements of Section 1303. The District Court did not reach this question. The requirements which taxpayer claims to have met are set forth in Section 1303(b) (1) (B, D), (2).

There was no dispute which was determined after the commencement of court proceedings as contemplated by subsection 1303(b) (1) (B).

Regulation No. 1.1303–1 provides:

"§ 1.1303–1 Income from back pay.

\* \* \* \* \* \*

"(b) Definition of back pay—(1) Remuneration delayed because of certain events. \* \* \*

\* \* \* \* \* \*

"(iv) \* \* \* An event will be considered similar in nature to those events specified in subdivisions (i), (ii), and (iii) of this subparagraph only if the circumstances are unusual, if they are of the type specified therein, if they operate to defer payment of the remuneration for the services performed, and if payment, except for such circumstances, would have been made prior to the taxable year in which received or accrued.

"For the purposes of section 1303 and this section, the term 'back pay' does not include remuneration which is deemed to be constructively received in the taxable year or years in which the services were performed, *remuneration paid in the current year in accordance with the usual practice or custom* of the employer even though received in respect of services performed in a prior year or years, *additional compensation for past services where there was no prior agreement or legal obligation to pay such additional compensation,* \* \* \*" (Emphasis added.)

Ad interim allowances in addition to the drawing account, began in 1946 and continued through 1955. The Court in making such allowances necessarily took into consideration the nature and character of the services rendered, the responsibility undertaken, the efficient manner in which the properties had been administered, time consumed and the results obtained. They were not wages or salaries which constituted retroactive increases under Section 1303(b) (2). The amounts paid were compensation which could only be determined as the reorganization progressed.

"Salary" has been defined as a "fixed annual or periodical payment for services, depending upon the time and not upon the amount of services rendered." Benedict v. United States, 176 U.S. 357, 360, 20 S.Ct. 458, 459, 44 L.Ed. 503; Flannery Bolt Co. v. Flannery, 86 F.2d 43, 44 (C.A.3).

In Zillmer v. United States, 233 F.2d 912 (C.A.7), trustees' counsel in a reorganization proceeding were appointed in 1940. They continued until 1944 and received ad interim allowances during the period, and final allowances in that year. Counsel contended unsuccessfully that Section 107(d) was applicable. The issue was whether the delay in payment was due to the intervention of bankruptcy or similar circumstances. The Court held that the bankruptcy did not intervene to cause deferment of taxpayers' compensation. Delay in payment was not due to any other events similar in nature.

 In our case, there was no agreement for any definite allowances to the taxpayer except the $1,000 per month drawing account until such allowances were made by the District Court. Hence, the allowances were not additional compensation for past services paid pursuant to a prior agreement or legal obligation to pay. Brooks v. United States, 280 F.2d 370 (C.A.5); Cowan v. Henslee, 180 F.2d 73 (C.A.6).

For the reasons indicated, the taxpayer does not qualify under the "back pay" provisions of Section 1303, and the judgment of the District Court is affirmed.