**In re Robert L. WATT, Debtor.**

**Bankruptcy No. 93–30673.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Nov. 14, 1994.

James R. Warren, Trustee, Springfield, OH.

Pamela Millard Stanek, Asst. U.S. Atty., Dayton, OH, for I.R.S.

### DECISION ON CHAPTER 7 TRUSTEE'S OBJECTION TO PROOF OF CLAIM FILED BY THE INTERNAL REVENUE SERVICE

THOMAS F. WALDRON, Bankruptcy Judge.

#### JURISDICTIONAL STATEMENT

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the Standing Order of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)—matters concerning the administration of the estate, (B)—allowance or disallowance of claims against the estate, and (K)—determinations of the validity, extent, or priority of claims.

This proceeding is presently before the court to determine what, if any, assets obtained by the chapter 7 trustee in this case are subject to the lien of the Internal Revenue Service.

## FACTS

Based upon the parties' pleadings, the court makes the following findings of fact:

1. Assessments against Robert L. Watt ("Watt") for unpaid taxes were made by the Internal Revenue Service (the "IRS") on the following dates:

| DATE | KIND OF TAX | BALANCE AT PETITION |
|------|-------------|---------------------|
| 4/6/92 | WT–FICA | $ 235.90 |
| 4/6/92 | WT–FICA | $ 4,656.11 |
| 5/4/92 | FUTA | $ 233.77 |
| 5/25/92 | WT–FICA | $ 3,099.69 |
| 9/7/92 | WT–FICA | $ 3,446.08 |
| | | $11,671.55 |

2. On October 14, 1992, Watt transferred his interest in real property at 8799 North State Route 68, West Liberty, Ohio in Champaign County, Ohio (the "Property") to his wife, Patricia Watt, by a quit claim deed recorded in Champaign County.

3. On October 19, 1992, a decree of dissolution of Watt's marriage to Patricia Watt was entered.

4. On November 9, 1992, the IRS filed its Notice of Tax Lien for the previously listed assessments in Logan County, Ohio, a county other than where the property is located.

5. On December 19, 1992, the Property was sold by Patricia Watt to John Nolan, II ("Nolan").

6. On January 7, 1993, the IRS properly filed its Notice of Tax Lien for these assessments in the amount of $12,258.18 in Champaign County, the county where the property is located.

7. On February 24, 1993, Watt filed for relief under chapter 7 of the Bankruptcy Code.

8. On May 3, 1993, the chapter 7 trustee (the "Trustee") obtained, from the IRS, proceeds from an auction of the debtor's personal property which the IRS had levied upon immediately prior to Watt's filing for bankruptcy relief.

9. On July 16, 1993, the Trustee filed an adversary proceeding against Patricia Watt alleging causes of action under 11 U.S.C. § 547 and § 548.

10. The IRS filed its proof of claim on August 19, 1993. The IRS asserts a secured claim in the amount of $11,671.55, a priority claim in the amount of $5,964.30, and an unsecured claim in the amount of $1,007.84 for a total claim of $18,643.69.

11. On February 24, 1994, the Trustee settled the adversary proceeding filed against Patricia Watt for the amount of $5,750.00. (Doc. 40–1).

12. The Trustee objected to the claim of the IRS on March 17, 1994. The Trustee objected to "all of the claim in excess of $5,964.30," the priority claim. (Doc. 45–1). The IRS filed a response on April 15, 1994. (Doc. 46–1). In addition, the Trustee filed a memorandum. (Doc. 48–1). The court held a hearing on June 8, 1994 to consider these pleadings. To allow the parties to clarify the facts and issues in this proceeding, the court ordered that the parties file supplemental documents. (Doc. 49–1).

13. Pursuant to this order, the Trustee filed an amended report of assets (Doc. 51–1). In this report, the Trustee stated that the following assets exist in the debtor's estate: 1) monies from the settlement of an adversary proceeding against Patricia Watt filed pursuant to 11 U.S.C. § 547 and § 548 in the amount of $5,750.00 (the "Settlement Monies"), 2) proceeds from an auction sale turned over to the Trustee by the IRS in the amount of $3,336.01 (the "Auction Proceeds"), and 3) interest in the amount of $89.56. The IRS filed a memorandum in support of its proof of claim (Doc. 53–1). The Trustee filed another objection to the IRS' proof of claim (Doc. 55–1), and the IRS filed its reply (Doc. 56–1) to the Trustee's objection.

## ISSUES

This proceeding presents the following issues: 1) whether the IRS has a lien on the Settlement Monies, 2) whether the IRS has a lien on the Auction Proceeds, and 3) if the IRS does have a lien on any of the assets held by the Trustee, whether the IRS' liens are to be subordinated under 11 U.S.C. § 724.

## DISCUSSION

### A. The Settlement Monies

██ The IRS asserts that it is secured with respect to the Settlement Monies because it had a lien on Watt's property prior to his filing for bankruptcy relief. The IRS further argues that, had it not been for the bankruptcy, it could have recovered from the debtor's wife, Patricia Watt, as a transferee of the Property under 26 U.S.C. § 6901, which addresses the liability of transferees. The Trustee disputes that the IRS is secured. He asserts that the IRS had not properly filed its Notice of Lien until after Patricia Watt transferred the Property to a bona fide purchaser.

In determining whether the IRS has a lien on the Settlement Monies, the court must initially determine the nature of the lien asserted by the IRS. Pursuant to § 6321 of the Internal Revenue Code, if a taxpayer fails to pay taxes there "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. "[T]he lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. Furthermore, in general, " '[p]roperty subject to a Federal tax lien which has been sold or otherwise transferred by the taxpayer may be seized while in the hands of the transferee or any subsequent transferee.' " *TKB International, Inc. v. United States*, 995 F.2d 1460, 1463–64 (9th Cir.1993) (quoting 26 C.F.R. § 301.6331–1(a)(1)). *See also United States v. Carson*, 741 F.Supp. 92 (E.D.Pa.1990). In fact,

When first created by Congress in 1866, a tax lien on a delinquent taxpayer's property "defeated even a bona-fide purchaser of

realty without notice or knowledge or an unfiled tax lien." The rule holding "secret" tax liens were good as against a purchaser for value without notice continued to be enforced through the beginning of the twentieth century, a period of history in which tax liens were few.

However, shortly after the ratification of the Sixteenth Amendment in 1913, Congress began a "retreat from the pre-amendment harsh rule in order to protect specified interests from the operation of the lien." Congress amended the tax lien statutes so that a "tax lien 'shall not be valid as against any mortgagee, purchase, or judgment creditor until notice of such lien shall be filed by the collector [in the designated place for filing].' "

"Subsequently, the Federal tax lien statutes were amended by Section 3672 of the Internal Revenue Code [in 1939] to protect mortgagees, pledgees, purchasers and judgment creditors where proper notice of the lien was not given as provided by the statutes." The prime purpose of this section, now 26 U.S.C. 6323, was "to mitigate the rigors of Sec. [6321] by protecting from secret liens the persons described in Subd. (a) of that section." The rule remains, however, "[u]nless a federal statute requires a government tax lien to be recorded, the unrecorded lien may be enforced against subsequent transferees."

*TKB Int'l, Inc.*, 995 F.2d at 1463–64 (citations omitted). Section 6323(a) provides:

The lien imposed by section 6321 shall not be valid as against any *purchaser*, holder of security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.

26 U.S.C. 6323(a) (emphasis added).[1] Section 6323(h)(6) defines purchaser:

(i) Real property.—In the case of real property, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated; and
(ii) Personal property.—In the case of personal property, whether tangible or intangible, in one office within the State (or the county, or

---

1. Subsection (f) of 6323 sets forth the requirements for filing proper notice of a federal tax lien. *TKB Int'l*, 995 F.2d at 1464. Section 6323(f) provides:

(1) Place for filing.—The notice referred to in subsection (a) shall be filed—
(A) Under State laws.—

The term "purchaser" means a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice.

Here, the IRS' liens attached to Watt's real and personal property at the time of assessment. This property remained subject to the liens even though it was transferred from Robert Watt to Patricia Watt. However, Patricia Watt sold the Property to Nolan on December 19, 1992, prior to the date by which the IRS had filed its Notice of Tax Lien as required by § 6323(f).

■ Both the IRS and the Trustee characterize Nolan as a bona fide purchaser. "A bona fide purchaser is one who has purchased property for value without notice of any defects in the title of the seller." *United States v. Hunter (In re Walter)*, 158 B.R. 984, 985 n. 3 (N.D.Ohio 1993) (citing *Black's Law Dictionary* 177 (6th ed. 1990)). Consistent with the plain language of § 6323(h)(6), the court finds that Nolan was a bona fide purchaser. Accordingly, because the IRS did not properly file its Notice of Tax Lien prior to Nolan's purchase of the Property, its lien was no longer secured by the Property transferred to Nolan.

The IRS states that it is not seeking to assert its lien against the rights of Nolan as a bona fide purchaser but is seeking to assert its lien against property recovered from Patricia Watt, the transferee of the fraudulent transfer. The IRS asserts that once the Trustee avoided the transfer to Patricia Watt, it was no different than if Watt had held the Property until he filed his petition. (Doc. 56–1, p. 4).[2]

Although the IRS states that it is not asserting its lien against the purchaser Nolan or the Property itself, the fact that the Property, the subject of the Trustee's recovery, was transferred prior to the time the IRS properly filed its Notice of Tax Lien is legally significant. The IRS is correct in that the successful exercise of a trustee's avoiding power causes the affected transfer to become void, allowing the trustee to recover the transferred property or its value under 11 U.S.C. § 550. However, even if the transfer of the Property is avoided, and the Property or its value is added to the debtor's estate, the IRS is still not secured by the Property.

By enacting legislation removing the "secret" tax lien position that had been accorded to the IRS, Congress chose to protect purchasers of property subject to IRS assessment liens and chose to leave the IRS with only a cause of action against a transferee who was not a bona fide purchaser and with no cause of action against the previously secured real property which was transferred. Here, prior to the date on which the IRS properly filed its Notice of Tax Lien, the Property was sold to a bona fide purchaser. The assessment lien no longer had any real property to which it could attach; and, to that extent, the IRS assessment lien was no longer a lien secured by the Property. Accordingly, because the IRS assessment lien was not secured by the Property itself, the IRS assessment lien is not secured by the Property itself, the IRS assessment lien is not secured by the Settlement Monies, which were obtained from the transfer of the Property as a compromise of the trustee's various

---

other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated.

. . .

. . . .

(2) Situs of property subject to lien.—For purposes of paragraphs (1) and (4), property shall be deemed to be situated—

  (A) Real property.—In the case of real property, at its physical location; or

  (B) Personal property.—In the case of personal property, whether tangible or intangible, at the residence of the taxpayer at the time the notice of lien is filed.

Under Ohio law, "[n]otices of liens for internal revenue taxes . . . shall be filed for record . . . in the office of the county recorder of the county in which the property subject to the lien is situated." O.R.C. § 317.09. *See also In re Ray*, 48 B.R. 534, 536 (Bankr.S.D.Ohio 1985). The IRS appears to concede that the proper place for filing its Notice of Lien against the Property was in Champaign County.

**2.** The court notes that the Trustee did not "avoid" the transfer to Patricia Watt, but rather "compromised" various causes of action against Patricia Watt.

causes of action pursuant to § 547 (preference) and § 548 (fraudulent conveyance). Any other determination would defeat the statutory requirement that for an assessment lien to be secured against real property transferred to a bona fide purchaser the IRS must properly record its lien and would be tantamount to giving the IRS a lien on property it would not have had if Watt had not filed a bankruptcy petition.[3]

Although the IRS, as it suggests, may have a cause of action against Patricia Watt under 26 U.S.C. § 6901 for transferee liability and may even be secured against property of hers, this does not elevate the IRS' position in the debtor Robert Watt's bankruptcy to that of a creditor secured by the funds obtained in a compromise of the trustee's claims against Patricia Watt.

The IRS argues that *Staats v. Barry (In re Barry)*, 31 B.R. 683 (Bankr.S.D.Ohio 1983) supports their position. To the extent that *Barry* may support the IRS' position, it is not determinative in this proceeding. Although *Barry* involved the fraudulent transfer of real property prior to the IRS filing its Notice of Tax Lien, it did not involve a "purchaser" under 26 U.S.C. § 6323. Likewise, other authorities cited by the IRS involve cases where the creditor held a lien that was properly perfected, prepetition, in the property which was the subject of the trustee's action.[4] In this proceeding, as a result of the transfer of the Property to a bona fide purchaser, the IRS no longer had a lien on the Property; nor, accordingly, on the proceeds obtained by the Trustee in compromise of his various causes of action.

Based upon the foregoing, the court concludes that the IRS is not secured with respect to the Settlement Monies.

## B. The Auction Proceeds

■■■■ The Trustee also asserts that the IRS is not secured in the Auction Proceeds. The government has several methods for collecting unpaid taxes. *See United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985); *United States v. Bank of Celina*, 721 F.2d 163, 166 (6th Cir.1983). "One method is to levy 'upon all property and rights to property ... belonging to [the taxpayer] or on which there is a lien....' 26 U.S.C. § 6331(a)." *Celina*, 721 F.2d at 166. A levy is merely the administrative method for collecting property encumbered by a federal tax lien. A "levy does not determine whether the Government's rights to the seized property are superior to those of other claimants; it, however, does protect the Government against diversion or loss while such claims are being resolved." *National Bank of Commerce*, 472 U.S. at 719, 105 S.Ct. at 2924. The release of

---

**3.** The court notes that, in the context of § 552, courts have held that even creditors with properly perfected security interests are not secured in recoveries made by a trustee in preference actions. *See e.g., Mellon Bank (East), N.A. v. Glick (In re Integrated Testing Products Corp.)*, 69 B.R. 901 (D.N.J.1987); *In re Tek–Aids Indus., Inc.*, 145 B.R. 253 (Bankr.N.D.Ill.1992); *Hennessy v. Kennedy (In re Sun Island Foods)*, 125 B.R. 615 (Bankr.D.Hawaii 1991). As the court stated in *Tek–Aids:*

A preference action can only be initiated in the context of a bankruptcy case after the filing of a bankruptcy case. Even if all of the elements spelled out by § 547(b) are present, no one can recover the preferential transfer as preferential unless some voluntary or involuntary bankruptcy petition is filed.

Indeed, to rule otherwise would give *every* secured creditor with a properly perfected security interest in all of the debtor's personal property a lien on recoveries by the trustee in preference actions. This would not only defy logic, but would undermine the policy behind the avoidance powers as well.

*Id.* at 256 (citations omitted; emphasis in original).

**4.** The court is aware of *Claussen Concrete Co., Inc. v. Walker (In re Lively)*, 74 B.R. 238 (S.D.Ga. 1987), *aff'd without opinion*, 851 F.2d 363 (11th Cir.1988), in which the court found that a valid judgment lien against the debtors' property was enforceable against the property recovered by the trustee in settlement of the trustee's claims against the debtor's wife for a fraudulent conveyance. *Lively* is, however, distinguishable from the present case. Unlike this proceeding, *Lively* involved a creditor with a valid, prepetition judgment lien secured by real property, which was the subject of the trustee's action. *See also In re Figearo*, 79 B.R. 914 (Bankr.D.Nev.1987) (creditor who held properly perfected security interest in debtor's jewelry inventory prior to debtor's bankruptcy filing held a security interest pursuant to § 552 in the funds held by the trustee as a result of a compromise of a fraudulent conveyance action).

a levy does not release an underlying lien. *See Wessel v. United States (In re Wessel)*, 161 B.R. 155, 161 (Bankr.D.S.C.1993).

The parties have not stated the date of the levy; however, the IRS stated that "[i]mmediately prior to the filing of his bankruptcy petition, some of the debtor's personal property was sold at auction." (Doc. 56–1, p. 5). As previously stated, the IRS' lien attached to Watt's personal and real property under 26 U.S.C. § 6321. Further, the IRS properly filed a Notice of Tax Lien prior to the date Watt filed for bankruptcy relief. Although the IRS released its levy of the auction proceeds, it did not release its lien. The IRS remains secured as to these auction proceeds.

## C. Distribution

Having determined that the IRS is not secured with regard to the Settlement Monies but is secured with regard to the Auction Proceeds, the court examines how the Trustee must distribute the estate assets. The IRS' claim is in the total amount of $18,643.69, with a secured claim of $11,671.55; a priority claim of $5,964.30; and an unsecured general claim of $1,007.84. The Trustee has only objected to the IRS' claim to the extent that the IRS argues that it is secured. The Trustee does not dispute that the IRS claims are priority claims.

Section 724 expressly pertains to priority and distribution problems involving property of the estate. *United States v. Darnell (In re Darnell)*, 834 F.2d 1263, 1268 (6th Cir. 1987). Section 724(b) provides that property encumbered by a tax lien shall be distributed in the following manner:

(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), or 507(a)(6) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

(3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien

exceeds any amount distributed under paragraph (2) of this subsection;

(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

(6) sixth, to the estate.

Pursuant to § 724, property is not distributed to the estate (§ 724(b)(b)) until all liens are satisfied. *Darnell*, 834 F.2d at 1268. Under § 724(b), a tax lien becomes the source of payment for administrative expenses up to the amount of the tax liens. *King v. Board of Supervisors of Fairfax County (In re A.G. Van Metre, Jr., Inc.)*, 155 B.R. 118, 122 (Bankr.E.D.Va.1993); *Wurst v. City of New York (In re Packard Properties, Ltd.)*, 112 B.R. 154, 156 (Bankr.N.D.Tex. 1990).

The IRS does not dispute that their lien is subject to subordination under § 724(b). Further, to the extent that the IRS sets forth a secured claim which remains unpaid, the tax and interest portion is allowed as a priority claim, and the penalty portion is allowed as a general unsecured claim. However, no distributions for administrative claims have been requested from these proceeds. Once such administrative claims have been filed and the issue of distribution is ripe for decision, the IRS may, at that time, dispute the amount by which their claims are to be subordinated.

## CONCLUSION

For the reasons set forth, the Trustee's objection to the proof of claim filed by the Internal Revenue Service is **GRANTED IN PART AND DENIED IN PART.** It is granted to the extent that the court determines that the IRS does not hold a valid lien against the Trustee's recovery of his claims against Patricia Watt. It is denied to the extent that the IRS does hold a lien against the Auction Proceeds; however, the IRS' lien shall be subordinated under § 724(b). Further, to the extent that the IRS has set forth a secured claim which will remain unpaid, the

tax and interest portions are allowed as a priority claim, and the penalty portion is allowed as a general unsecured claim.