**In re SOUTHEAST RAILROAD CONTRACTORS, INC., Debtor.**

**Bankruptcy No. 1–93–10780.**

United States Bankruptcy Court, E.D. Tennessee, Southern Division.

Aug. 15, 1996.

Thomas E. Ray, Chattanooga, Tennessee, Trustee for the Estate.

Shannon L. Hough, Trial Attorney, Tax Division, U.S. Department of Justice, Washington DC.

## MEMORANDUM

JOHN C. COOK, Bankruptcy Judge.

This case is before the court on the trustee's objection to the claim filed by the Internal Revenue Service ("IRS"). The proof of claim filed by IRS asserts a secured claim based on a tax lien, but the trustee disputes this claim and insists that IRS is in fact an unsecured creditor with respect to certain preference recoveries effected by the trustee. The trustee also seeks to "prime" IRS' secured claim pursuant to 11 U.S.C. § 724(b) and to use property encumbered by the tax liens to pay administrative expenses.

### I.

The parties have stipulated to the relevant facts, which are as follows:

1. On September 18, 1992, the IRS recorded a lien in the Register of Deeds Office in Hamilton County, Tennessee, against C & R Railroad Construction, Inc., which subsequently changed its name to Southeast Railroad Contractors, Inc. The lien was for the total sum of $75,478.47 and was for 941 taxes due for the tax periods ending December 31, 1991, and March 31, 1992.

2. On December 10, 1992, the IRS recorded another lien in the Register of Deeds Office in Hamilton County, Tennessee, against Southeast Railroad Contractors, Inc. The lien was for the total sum of $26,913.62. This lien was for civil penalties for the period December 31, 1989, for the 941 taxes for June 30, 1992, and for 1120 taxes due for October 31, 1989.

3. This bankruptcy case was instituted on March 1, 1993, as a voluntary Chapter 11.

4. On May 2, 1994, the case was converted from Chapter 11 to Chapter 7.

5. On May 5, 1994, Thomas E. Ray was duly appointed as Chapter 7 trustee in bankruptcy.

6. The assets of the estate that have been collected by the trustee consist of the following:

| | | |
|---|---|---|
| Cash and deposits | | $ 2,090.15 |
| Sale of motor vehicles | $82,950.00 | |
| Less sale expenses | − 10,368.60 | 72,581.40 |
| Refunds | | 5,214.35 |
| Recovery of preferential transfers | | 40,775.00 |
| Interest Earned | | 1,943.08 |
| Total | | $122,603.98 |

7. The following claims have heretofore been allowed and paid pursuant to 11 U.S.C. § 507(a)(1):

| | |
|---|---|
| Ray & Sibley, P.C. (Attorneys for the Trustee) | $ 6,445.04 |
| James Foster (Accountant for Debtor–in–Possession) | 11,806.75 |
| Kennedy, Fulton & Koontz (Attorneys for Debtor–in–Possession) | 20,253.15 |
| Steve Beckham (Attorney for Creditors' Committee) | 8,162.00 |
| Total § 507(a)(1) Expenses Paid | $ 46,666.94 |

8. By order of the court entered March 6, 1996, the following additional expenses are allowed by the court as Chapter 11 administrative expenses payable pursuant to 11 U.S.C. § 507(a)(1):

| | |
|---|---|
| United States Trustee | $ 4,250.00 |
| Electric Power Board | 2,698.86 |
| State of Tennessee | 4,537.01 |
| Tenn. Dept. of Employment Security | 9,659.31 |
| Total | $ 21,145.18 |

9. The trustee anticipates additional administrative expenses allowable pursuant to § 507(a)(1) in the approximate amount of $27,000.

10. The IRS timely filed a proof of claim against the debtor. The claim was amended on February 7, 1996, and is for unpaid federal income and FICA taxes, federal corporate income taxes, and a civil penalty, with penalties and interest accruing thereon in the total amount of $157,-909.38.

## II.

■ The first issue in this case is whether the tax lien asserted by IRS extends to the preference recoveries made in this case by the trustee pursuant to 11 U.S.C. §§ 547 and 550. IRS contends that its lien covers the preference recoveries and that its claim is secured by them. The trustee disagrees. Under Fed.R.Bankr.P. 3001(f), a properly-filed proof of claim is prima facie evidence of the validity and amount of that claim. Once a colorable challenge to the claim has been made, however, the burden of going forward shifts to the creditor who must then prove its claim. *In re Ousley,* 92 B.R. 278, 282 (Bankr.S.D.Ohio 1988).

## A.

■ IRS makes two alternative arguments. First, it contends that the preference recoveries constitute postpetition property of the debtor and that its tax lien attaches to that property. There is no question but that, prior to bankruptcy, IRS had a valid lien "upon all property or rights to property, whether real or personal, belonging to [the debtor]." 26 U.S.C. § 6321. While it is certainly true, as IRS contends, that the § 6321 federal tax lien reaches all property or rights to property of the taxpayer, including property acquired after the date of the assessment, *Glass City Bank v. United States,* 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945); *United States v. Bank of Celina,* 721 F.2d 163, 169 (6th Cir.1983), § 6321 on its face restricts the operation or attachment of the lien to property "belonging" to the

taxpayer, that is, to the taxpayer's interest in the property. If, then, attachment of the federal tax lien is limited to property belonging to the taxpayer, the tax lien cannot attach for the first time to the preference recoveries in this case because they do not "belong" to the debtor. It has no interest in them.

 Preference recoveries, and the trustee's power to achieve them, are unique to bankruptcy. A recovery by the trustee is not for the benefit of the debtor, but rather is designated as a recovery "for the benefit of the estate." 11 U.S.C. § 550(a). In a Chapter 7 case, the debtor can neither bring a preference action itself nor force the trustee to do so. Moreover, the Chapter 7 debtor has no legal or equitable interest in preference recoveries, and it can expect no distribution from preference recoveries. Indeed, before a preference can be recovered in a bankruptcy case, the trustee must show that creditors will not receive a 100% dividend from property of the estate. *See* 11 U.S.C. § 547(b)(5); *Palmer Clay Products Co. v. Brown,* 297 U.S. 227, 229, 56 S.Ct. 450, 80 L.Ed. 655 (1936) (if distribution in bankruptcy case is less than 100%, any payment to unsecured creditor during the preference period will enable that creditor to receive more than it would have received in liquidation had the payment not been made); *Ray v. City Bank and Trust Co. (In re C–L Cartage Co.),* 899 F.2d 1490, 1493 (6th Cir.1990). Naturally, if creditors are not paid a 100% dividend from the distribution of property of the estate, there will be nothing left to distribute to the debtor once the bankruptcy creditors have received their distribution. This means that a preference recovery by a trustee in a bankruptcy case can never

be characterized as "belonging" to the debtor. At the time it comes into existence and first becomes anyone's property, it is property of the estate to be distributed only to the creditors in the case.[1] The court must therefore reject IRS' argument that its lien first attached to the preference recoveries in this case when they came into existence postpetition. At that point they did not belong to the debtor in any sense, nor could they.[2]

**B.**

 In the alternative, IRS argues that its prepetition tax liens, which extend to all the property and interests in property of the debtor, remained attached throughout the process of the preferential transfer by the debtor and the recovery of the preference by the trustee. If that is the case, then the trustee took property from the preference transferee that already had a lien attached to it. It is true, of course, that tax liens generally survive bankruptcy and, being nonconsensual, are not cut off by the operation of 11 U.S.C. § 552(a).

 The problem with this argument is that once a lien is challenged, the burden of establishing the validity of the lien rests on the party claiming the lien. Thus, in order to prevail on this theory, IRS must establish that it has a lien on the very moneys now in the hands of the trustee. In this case, IRS is confronted with a difficult identity problem unless it can show that the moneys now in the hands of the trustee are the very same moneys paid by the debtor to the preference transferee, i.e., that the moneys once belonged to the debtor at a time when the IRS lien covered them.

---

**1.** IRS relies upon *In re Southwest Equipment Rental, Inc.,* 1993 WL 725690, No. 1–88–0003 (Bankr.E.D.Tenn.1993), an unpublished opinion from this court in which the court found that an IRS tax lien may attach to postpetition recoveries by a trustee. In that case the parties did not raise, nor did the court consider, whether preference recoveries by a trustee can constitute property "belonging" to a debt-

or taxpayer within the meaning of 26 U.S.C. § 6321.

**2.** In light of the court's disposition of IRS' first argument, it is not necessary to consider the trustee's argument that the automatic stay would prevent attachment of the IRS lien to property acquired by the estate postpetition.

To clarify the legal effect of these transactions, it is helpful to hypothesize a similar transaction in which the property transferred is not fungible, as money is. If, for example, the debtor had preferentially transferred a television to a creditor as an initial transferee, there is no question but that the tax lien would follow the television into the hands of the creditor where the IRS would be capable of levying on it. If it be further assumed that the creditor then transferred that television to a subsequent transferee, the tax lien would remain attached to the television and the IRS could pursue its property into the hands of that third party. It could not, however, proceed against the initial transferee who no longer had the property. If at this point a bankruptcy trustee sued the initial transferee to recover the television or its value, the action against the initial transferee would recover the value of the television, but not the television itself. The initial transferee might even substitute another television of similar value and convey it to the trustee by way of returning the preference. In this example, it is easy to see that the IRS would have no lien on the substituted television in the hands of the trustee, because its lien would have followed the debtor's television through the hands of the initial transferee and on into the hands of the subsequent transferee. When the trustee challenged the IRS to prove it had a lien on the television in the hands of the trustee, IRS would be unable to do so because it could not prove that *that* television was ever the property of the debtor. If the initial transferee had paid up in money instead of a substitute television, IRS would have the same problem.

The fungibility of money and the attendant commingling problems make this an even more difficult case for IRS by further beclouding the identity of the funds in the hands of the trustee. In order to establish its lien, IRS had to prove that the preference recovery moneys were the very same moneys transferred by the debtor to the initial transferee, just as it would have to

have shown in the example that the television recovered by the trustee was the same one initially conveyed away by the debtor. The IRS has not carried this burden, and the court must accordingly find that the IRS has no lien on the moneys in question.

### C.

In addition to the foregoing considerations, the court observes that the majority of courts confronting a similar question have held that preference actions are unique bankruptcy devices designed specially to increase the dividend for unsecured creditors and that therefore secured creditors, even those with rights in proceeds, can have no interest in a trustee's preference recovery. *See Barber v. McCord Auto Supply, Inc. (In re Pearson Indus., Inc.)*, 178 B.R. 753, 761–62 (Bankr. C.D.Ill.1995) (holding that "where the secured creditor has no independent claim to the property which is subject to the trustee's avoiding powers and could not recover it from the third party, the secured creditor cannot improve its position because of the trustee's exercise of the avoiding powers and assert an additional claim by claiming it from the trustee who recovered it. . . ."); *Lease–A–Fleet, Inc. v. University Cadillac, Inc. (In re Lease–A–Fleet, Inc.)*, 152 B.R. 431, 439 (Bankr.E.D.Pa. 1993) (holding that moneys recovered as the result of a preference action are generally not "proceeds" of the creditor's collateral); *In re Tek–Aids Indus., Inc.*, 145 B.R. 253, 256 (Bankr.N.D.Ill.1992) ("Allowing a prepetition blanket security interest to reach preference actions would be tantamount to giving a creditor additional collateral it would not have had if the debtor had not filed a bankruptcy petition. . . ."); *Hennessy v. Kennedy (In re Sun Island Foods)*, 125 B.R. 615, 619–20 (Bankr.D.Hawai'i 1991) ("Indeed, it is illogical to allow a secured creditor to attach the proceeds of recoveries, while at the same time preventing it from compelling a trustee to pursue a preference action".); *see also Re-*

search–*Planning, Inc. v. Segal (In re First Capital Mortgage Loan Corp.),* 917 F.2d 424, 427–28 (10th Cir.1990) (holding that preference recoveries are intended to be property of the estate and are beyond the reach of individual creditors).[3]

■ The general rule of these cases is summarized by the editors of *Collier on Bankruptcy* as follows:

> Assuming that a creditor has a valid, unavoidable prepetition security interest, the interplay between section 552 and sections 544, 547, and 548 of the Code arises when the creditor asserts a right under its security interest to any property recovered by the debtor-in-possession or the trustee as a result of an avoidance action. The general rule is that if the creditor has an independent right to avoid the transfer of property it may be entitled to claim an interest in any property recovered. *Thus, moneys recovered as the result of a preference action are generally not found to be "proceeds" of the creditor's collateral within the meaning of section 552(b)(1) because such a cause of action is generally one that can be pursued only by the trustee.*

4 *Collier on Bankruptcy* ¶ 552.02 at 552–14 (15th ed.) (emphasis added).

■ While most of the foregoing cases were decided under 11 U.S.C. § 552, a provision not here applicable because the tax liens in question are nonconsensual liens, those cases do illustrate the reluctance of the courts to find that preference recoveries are in some way the proceeds of an earlier preferential transfer. The IRS is really suggesting that the preference recoveries in this case can be viewed as the proceeds of the debtor's property, and in so doing IRS meets heavy judicial resistance. Moreover, unlike most of the creditors in the foregoing cases, who had palpable claims to the proceeds of their collateral by virtue of U.C.C. § 9–306, a tax lien is not a security interest as defined in the Uniform Commercial Code, U.C.C. § 9–105(1), and so Article 9 of the Uniform Commercial Code is not applicable in this situation. Lastly, IRS has produced no authority, statutory or otherwise, to demonstrate that its tax lien follows or attaches to proceeds from the disposition of property encumbered by a tax lien. Even if there were such general authority, there would still be a serious question as to whether a preference recovery, considering its special bankruptcy purpose and existence, could be viewed as proceeds in the first place.

### III.

The trustee also contends that he may use property of the estate which is encumbered by tax liens to pay administrative expenses,[4] even though he now has on hand property of the estate which is unencumbered and which could in theory be used for that purpose. IRS, of course, objects to this treatment and insists that the unencumbered funds should be used in payment of administrative expenses so as to spare its property for payment of its liens.

---

**3.** The two cases relied on most heavily by IRS are *In re Watt,* 174 B.R. 942 (Bankr.S.D.Ohio 1994) and *Cameron v. IRS (In re Scherbenske),* 71 B.R. 403 (Bankr.D.N.D.1987). Neither case furnishes much support for IRS' position. In *Watt,* the court found that IRS' lien had detached from the property in question so that IRS was precluded from claiming preference recovery proceeds. The court did not consider whether IRS would have done better with a valid lien, although it may have assumed so.

*Scherbenske* is factually very different from the case at bar because it involved only a simple question of lien priority and there was no preference recovery at all by the trustee. As such, it cannot support the IRS' position that preference recoveries are subject to prepetition tax liens.

**4.** 11 U.S.C. § 724(b) provides that property of the estate subject to certain tax liens may be used to pay the holders of priority claims set out in 11 U.S.C. § 507(a)(1)–(7). In this discussion the court, like the parties, will use "administrative expenses" as shorthand for those priority claims.

This is an unusual question, and the few cases considering it are somewhat conclusory and do not settle the question. In *In re Dowco Petroleum, Inc.*, 137 B.R. 207, 210 (Bankr.E.D.Tex.1992), the court held that 11 U.S.C. § 724(b) requires the trustee "to exhaust all unencumbered funds of the estate in payment of administrative expenses before resorting to the priming option. . . ." The court believed this conclusion to be "self-evident." *Id.* In *In re Granite Lumber Co.*, 63 B.R. 466, 473 (Bankr.D.Mont.1986), the court reached the same result on the grounds that a contrary ruling would require the secured tax claimant to subsidize junior creditors. On the other hand, the court in *Wurst v. City of New York (In re Packard Properties, Inc.)*, 112 B.R. 154, 158–59 (Bankr. N.D.Tex.), refused to require a trustee to look first to unencumbered assets of the estate and held that "[t]ax liens were chosen by Congress as a means to pay administrative expenses . . . with a tax lien on it, § 724(b) provides for the taxing authorities to bear the cost to some extent." *Id.*

The statute is couched in unequivocal language and requires that "[p]roperty in which the estate has an interest . . . *shall* be distributed . . ." in the manner set out. 11 U.S.C. § 724(b) (emphasis added). There is no qualification restricting the operation of the statute to cases in which other funds are unavailable or providing for distribution only to the extent that unencumbered assets of the estate will not cover administrative expenses.

■ The statute itself is not ambiguous, but there is a question about when it is meant to operate, i.e., before or after unencumbered assets are spent on administrative expenses. A resort to the legislative history of § 724(b) reveals that the section "subordinates tax liens to administrative expense and wage claims. . . ." H.Rep. No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) p. 382, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6338. It is designed to allow priority claimants holding claims defined in 11 U.S.C. 507(a)(1)–(7) to "step into the shoes of the tax collector." *Id.* Other portions of the legislative history state that the effect of § 724(b) is that "a tax claim secured by a lien is treated as a claim between the fifth and sixth priority in a case under chapter 7 rather than as a secured claim." *Id., reprinted in* 1978 U.S.C.C.A.N. 5963, 6459. The legislative history details very well *how* the statute operates, but it says nothing about *when* the statute is triggered and gives no clue as to whether its operation is conditional upon some other state of affairs.

■ The court must conclude that the legislative history of this statute does not resolve the problem at hand. Under such circumstances, a court should adhere to the statute and enforce it as written, provided that the result produced is not unreasonable. The statute itself is unequivocal and contains no provision limiting its operation to situations in which unencumbered funds are insufficient to pay administrative expenses. If Congress had meant to trigger the statute's operation only when other funds were unavailable to pay expenses, then surely it would have said so. That kind of condition precedent is too obvious to have been merely overlooked. Accordingly, the court holds that 11 U.S.C. § 724(b) operates automatically and without conditions precedent. The trustee may therefore pay administrative expenses from assets subject to IRS' lien in accordance with 11 U.S.C. § 724(b) without first expending the existing unencumbered assets of the estate.

### IV.

For the foregoing reasons, the court finds that IRS has no lien on the preference recoveries now in the hands of the trustee. Thus, it will sustain the trustee's objection to IRS' claim insofar as the claim asserts a secured status with respect to the preference recoveries. The trustee may also pay administrative expenses from assets subject to IRS' tax liens without

first resorting to unencumbered assets of the estate.

An appropriate order will enter.