**Randall L. FRANK, Plaintiff/Appellee,**

v.

**State of MICHIGAN, acting through the MICHIGAN UNEMPLOYMENT AGENCY DEPARTMENT OF CONSUMER & INDUSTRY SERVICES, Defendant/Appellant.**

**No. 99–10333.**

United States District Court,
E.D. Michigan,
Northern Division.

Feb. 3, 2000.

Donna K. Welch, Michigan Department of Attorney General, Employment Security Division, Detroit, MI, for Thompson Boat Company In re Michigan State Unemployment Agency, Department of Consumer Industry Services, appellant.

Henry L. Knier, Jr., Lambert, Leser, Bay City, MI, for Randall L. Frank, Trustee, appellee.

### OPINION AND ORDER AFFIRMING DECISION OF BANKRUPTCY COURT

ROBERTS, District Judge.

#### I.

This matter is before the Court on an appeal by the State of Michigan Unem-

ployment Agency ("Appellant" or "UA") from a decision by the Bankruptcy Court ("BC"). The central issue is whether the BC erred in concluding that the UA's pre-petition liens on Debtor's property do not attach to preference proceeds recovered by Trustee post-petition. For the reasons explained below, the Court **AFFIRMS** the decision.

## II.

Thompson Boat Co. ("Debtor") filed a Chapter 11 petition on May 19, 1993. The case was converted to Chapter 7 on August 19, 1994. Randall L. Frank ("Trustee") is the trustee of the Chapter 7 estate.

Prior to Debtor filing its bankruptcy petition, the UA had filed certain tax liens, pursuant to the Michigan Employment Security Act ("MESA"), M.C.L. § 421.15(e), for past due unemployment taxes in the Saginaw County Register of Deeds and the Michigan Secretary of State. After the Chapter 11 case was filed, Appellant filed a claim on September 22, 1993, for Debtor's unpaid unemployment contributions. When the case was converted, Appellant also filed an amended claim.

Upon conversion to Chapter 7, Trustee commenced a number of preference actions against Debtor's creditors. In so doing, Trustee recovered over $300,000.00. Thereafter, Trustee filed an Adversary Complaint to determine the validity and extent of Appellant's liens. In Count II, Trustee alleged that the preference proceeds recovered constitute post-petition property of the estate and are not subject to the UA's pre-petition liens. Trustee argued that, since only a trustee can bring a preference action, the UA could never have recovered the funds on its own, and the liens could not have attached to that property.[1] The UA responded that the

Bankruptcy Code only prevents security interests from attaching to property acquired post-petition, and that it does not prevent statutory liens from so doing. It claimed that under the applicable Michigan law, its liens attach and continue to attach to all property of an employer until the tax is paid.

Trustee then filed a Motion for Summary Judgment as to Count II, asking the BC to find that: (1) the automatic stay provisions of the Bankruptcy Code prevented all liens from attaching post-petition to the recovered preference proceeds; (2) proceeds recovered as a result of a preference action are not proceeds of the UA's collateral within the meaning of the Code's provision allowing attachment in certain situations; and (3) the recovered preference proceeds are post-petition property of the estate which do not arise out of any of the secured creditor's collateral, and are preserved for equal distribution to all creditors.

The UA responded to the Motion, requesting the BC to rule that the perfected statutory liens attach to the preference proceeds. The UA took the position that Trustee could not avoid its liens under the relevant provisions of the Code and, therefore, the lien was perfected in property acquired post-petition. In other words, the UA claimed that any property acquired by the estate is subject to pre-petition encumbrances of record. It further claimed that the Code's distribution scheme provides for the satisfaction of allowed claims secured by tax liens.

Trustee responded, claiming that the issue was not whether the liens were valid, but whether they attached to the post-petition preference proceeds. According to Trustee, the UA could not have encumbered these proceeds because these pro-

---

1. Count I of the Complaint alleged that the    liens were not properly perfected.

ceeds (and, in particular, the right to recover them) did not exist before the filing of the petition which gave Trustee the right to avoid preferences. At oral argument, when the UA claimed that Trustee was essentially seeking to impermissibly avoid a lien, the BC responded as follows:

> [Trustee is] not saying, "[Y]ou have a lien but we can set it aside as a preference or we can set it aside as a fraudulent transfer," [Trustee] is simply saying you don't have a lien on this asset because your statutory lien does not attach to assets that the trustee produces through the exercise of his Chapter 5 rights. So this is not an avoidance action. They don't give you that much. In order to have an avoidance action, they'd have to assume that you do have a lien and agree that you do. They're saying you don't and never did have a lien.

On August 5, 1999, the BC issued an opinion granting Trustee's Motion for Summary Judgment on Count II. The BC reasoned that Debtor and the estate are separate entities. At the same time, the preference provisions allow only Trustee, not Debtor, to avoid certain transfers, and the proceeds are recovered on behalf of the estate, not Debtor. According to the BC, since the statutory liens only attach to property of the employer, who is Debtor here, the liens do not reach post-petition property acquired by the estate. In other words, since Debtor did not "own" the right to pursue a preference action, the statutory liens could not be extended to attach to the proceeds recovered by such action.

The UA now appeals that decision.

## III.

■ The sole issue presented in this appeal is whether the BC erred in concluding that Appellant's pre-petition liens do not attach to proceeds recovered by Trustee as a result of post-petition preference actions. Both parties agree that the issue presents a purely legal question. As such, this Court's review is *de novo*. *See In re Baker & Getty Financial Services, Inc.,* 106 F.3d 1255, 1259 (6th Cir.1997) ("The district court then reviews the bankruptcy court's findings of fact for clear error and the bankruptcy court's conclusions of law de novo."). Upon *de novo* review, this Court concludes that the BC did not commit an error of law, and, therefore, affirms the decision.

■ The Court agrees that the estate/debtor dichotomy applies to the preference provisions, thereby barring attachment of the proceeds by pre-petition liens. The distinct nature of the two entities has been previously recognized. For example, in *In re Winom Tool & Die, Inc.,* 173 B.R. 613 (Bankr.E.D.Mich.1994), the court reasoned that in the absence of a trustee the debtor will act as the debtor in possession, but the debtor's identity is not completely merged into that of the debtor in possession. As such, "property interests may be held by the post-petition debtor in its own right (non-estate property) or as debtor in possession (estate property)." *Id.*

Admittedly, courts have disagreed as to the circumstances in which this dual entity concept is applicable. For example, courts in this district have found that the distinction even applies to the mutuality set-off provisions of 11 U.S.C. § 553.[2] *In re Wa-*

---

**2.** 11 U.S.C. § 553 preserves a creditor's right to offset mutual obligations between it and a debtor. To establish a right of setoff, the creditor must generally demonstrate:

1. A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case.

*lat Farms, Inc.,* 69 B.R. 529, 530 (Bankr. E.D.Mich.1987), while others find otherwise. Additionally, the Supreme Court, when discussing enforceability of collective bargaining agreements against a debtor-in-possession under Chapter 11, cast some doubt on the validity of the distinction, stating:

> Obviously if the latter were a wholly "new entity," it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts [under 11 U.S.C. § 365], since it would not be bound by such contracts in the first place. For our purposes, it is sensible to view the debtor-in-possession as the same "entity" which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have done absent the bankruptcy filing.

*NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). Nonetheless, there is no good reason to disturb the debtor/trustee dichotomy in this particular context.

First of all, Appellant does not show that any court has ever rejected its application in the context of preference actions by a trustee. Moreover, courts interpreting *Bildisco* completely disagree about its effect on the dual entity theory. Some courts have specifically rejected the theory altogether, *see e.g., In re Ontario Locomotive & Indus. Ry. Supplies,* 126 B.R. 146, 147 (Bankr.W.D.N.Y.1991) (stating that *Bildisco* "would appear to have laid to rest the 'separate entity' doctrine for all time"), while others have concluded that *Bildisco* is limited to the context in which it arose. Indeed, the court in *Patton v. John Deere Co. (In re Durham),* 87 B.R. 300, 302 (Bankr.D.Del.1988), stated that *Bildisco* merely declared that "for the purposes of § 365"[3] a debtor-in-possession is not a new entity. However, the court declined to reject the dichotomy in a 11 U.S.C. § 552(b)[4] case, reasoning: "[T]he Code creates upon the filing of a case an estate composed of all property in which a debtor had a legal or equitable interest. The estate is a new entity." 87 B.R. at 302. Given the clear conflict of interpretation, Appellant's claim that the duality concept does not apply is not persuasive.

Further, the BC's opinion contains a well-reasoned analysis as to why the dichotomy should not be rejected in the context of the avoidance of preference transfers. As the BC points out, the power to avoid is specifically given to Trustee, rather than Debtor. Moreover, a review of other provisions of the Code reveals that when the legislature intended to give powers to a debtor, it knew how to do so. *See e.g.,* 11 U.S.C. § 522(h) ("The debtor may avoid a transfer of the property of the debtor if . . ."). As such, the Court can infer that Congress did not intend for the power to avoid preferences to belong to Debtor in the first instance. Moreover,

---

2. The creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case.
    3. The debt and the claim are mutual obligations.
*Braniff Airways, Inc. v. Exxon Co., U.S.A.,* 814 F.2d 1030, 1035 (5th Cir.1987) (quotation omitted).

**3.** 11 U.S.C. § 365 governs the extent to which a trustee may assume or reject an executory contract or unexpired lease of the debtor.

**4.** 11 U.S.C. § 552(b) generally specifies that if a security agreement entered into before the commencement of a bankruptcy case creates a security interest in property of the debtor which extends, inter alia, to proceeds, then that security interest extends to proceeds acquired by the estate after the commencement of the case to the extent provided by the agreement and by applicable non-bankruptcy law.

the Code makes clear that debtors have no interest in the proceeds recovered from preference actions, as any transfers avoided are "preserved for the benefit of the estate...." 11 U.S.C. § 551. As such, sound principles of statutory interpretation support the application of the dual entity theory in this context.

In so concluding, the Court further finds that the BC reasonably rejected the reasoning of *Southwest Equipment,* 1993 Bankr.LEXIS 1554 (Bankr.E.D.Tenn. Oct. 12 1993). As an initial matter the court in *Southwest* found only that 11 U.S.C. § 552(a)[5] allows an IRS tax lien to attach to post-petition recoveries by a trustee; it did not consider the issue of whether preference recoveries by a trustee can constitute the property of a debtor taxpayer, attachable by such liens. Likewise, the case of *National Financial,* 96 B.R. 844 (Bankr.N.D.Ill.1989), relied on by *Southwest,* is also distinguishable for its failure to address preference transfers. Finally, and most important, the *Southwest* court has since held that preference recoveries do not constitute property "belonging" to the debtor-tax-payer and thus, IRS liens do not cover preference recoveries. *In re Southeast Railroad,* 235 B.R. 619 (Bankr. E.D.Tenn.1996).

The *Southeast* court, analyzing a federal tax lien analogous to the one at issue here, noted that lien reached all property of the taxpayer, whether real, or personal. 235 B.R. at 621. However, the court also noted that the lien attached only to property that belonged to the taxpayer,—i.e., to the taxpayer's interest in the property. It

reasoned: "If then, the attachment of the ... lien is limited to property belonging to the taxpayer, the tax lien cannot attach for the first time to the preference recoveries in this case because they do not 'belong' to the debtor. It has no interest in them." *Id.* at 622. Noting that the power to avoid preference is unique to the trustee and for the benefit of the estate, the court concluded that the recovery could never be characterized as an asset or property of the debtor. *Id.*

Further, although the court recognized that non-consensual tax liens are not cut off by 11 U.S.C. § 552(a), once the lien is challenged, the burden of establishing its validity rests with the party claiming it. "Thus, in order to prevail, the IRS must establish that it has a lien on the very moneys now in the hands of the trustee." *Id.* In other words, it would have to show that "the preference recovery moneys were the very same moneys transferred by the debtor to the initial transferee...." *Id.* at 623. However, the court found that the fungibility of money and commingling problems beclouded the identity of the money, and concluded that the IRS did not meet its burden. *Id.*

Finally, the court observed that the majority of courts considering a similar question have found that "preference actions are unique bankruptcy devices designed specially to increase the dividend for unsecured creditors and that therefore secured creditors, even those with rights in the proceeds, can have no interest in a trustee's preference recovery."[6] *Id.* Recogniz-

---

5. 11 U.S.C. § 552(a) generally provides that property acquired by the estate or the debtor post-petition is not subject to pre-petition security interests.

6. The court cited the following cases: *Barber v. McCord Auto Supply, Inc. (In re Pearson Indus., Inc.),* 178 B.R. 753, 761–62 (Bankr. C.D.Ill.1995), which held that "where the se-

cured creditor has no independent claim to the property which is subject to the trustee's avoiding powers and could not recover it from the third party, the secured creditor cannot improve its position because of the trustee's exercise of the avoiding powers and assert an additional claim by claiming it from the trustee who recovered it...."; *Lease–A–*

ing that these cases were decided under 11 U.S.C. § 552, the court reasoned that they nonetheless illustrated a judicial reluctance to find that preference recoveries are in some way the proceeds of the debtor's property. *Id.* at 624.

In short, the Court rejects Appellant's attempt to apply *Southwest* and or *National Financial, supra.* Rather, because the *Southeast* case is on point and well-reasoned, the Court follows it. As such, the Court also concludes that the debtor/estate dichotomy is applicable and Appellant's pre-petition lien could not have attached to the preference proceeds recovered for the estate by Trustee post-petition. Thus, the Court affirms the decision of the BC.

█ In affirming, the Court also rejects Appellant's remaining arguments. In particular, the Court rejects Appellant's claim that the BC misconstrued the MESA provisions by assuming that Debtor is the only employer under that act. Although Appellant attempts to claim that the Trustee can also be considered an employer as that term is defined, this Court has long since held otherwise. A trustee in bankruptcy is an "officer of the court" and does not become an "employer" simply by acquiring title to all assets of a bankrupt employer. *In re Park Brewing Co.*, 48 F.Supp. 750, 751 (E.D.Mich.1942). Indeed, it is generally recognized that

> A trustee in bankruptcy occupies a special fiduciary position. He does not stand merely in the status of the debtor.... The (Bankruptcy) Act gives the

trustee extraordinary powers to assert claims against property both in the possession of the reorganization court and in the hands of third persons in cases where the debtor would be estopped to act and, in some cases, even where creditors could not succeed.

*Williamson v. U.S.*, 309 F.2d 892, 896 (6th Cir.1962).

Likewise, the Court also rejects Appellant's claim that the BC effectively avoided or otherwise unlawfully subordinated an unavoidable lien. As the BC noted, the validity of the lien was not disputed, the only issue was whether the liens attached to the recovered preference proceeds. To paraphrase the BC: "[T]he Trustee is simply saying you don't have a lien on this asset ..." As such, Appellant's extensive discussion about the voidability of the statutory liens is irrelevant. Moreover, while it is true that property that is encumbered by a tax lien enters the estate subject to that lien, based on the above analysis, Appellant's lien could not attach to property that did not exist until after the preference action. Further, there is no inequity here; the Court is merely following the explicit terms of the Bankruptcy Code, which gives the Trustee power to avoid transfers for the benefit of the estate. Indeed, it is Appellant's position that would create the inequity. Under its analysis, the UA's prior liens on Debtor's property suddenly attached to property that did not exist until the filing of the petition.

---

*Fleet, Inc. v. University Cadillac, Inc. (In re Lease–A–Fleet, Inc.)*, 152 B.R. 431, 439 (Bankr.E.D.Pa.1993), which held that moneys recovered as the result of a preference action are generally not "proceeds" of the creditor's collateral; *In re Tek–Aids Indus., Inc.*, 145 B.R. 253, 256 (Bankr.N.D.Ill.1992), which concluded that "[a]llowing a prepetition blanket security interest to reach preference actions would be tantamount to giving a credi-

tor additional collateral it would not have had if the debtor had not filed a bankruptcy petition...."; *Hennessy v. Kennedy (In re Sun Island Foods)*, 125 B.R. 615, 619–20 (Bankr.D.Hawai'i 1991), which found that ("it is illogical to allow a secured creditor to attach the proceeds of recoveries, while at the same time preventing it from compelling a trustee to pursue a preference action.").

## IV.

Based on its *de novo* review of the decision of the BC, the Court concludes that Appellant's arguments are unpersuasive and **AFFIRMS** the decision. Because the decision of the BC is sound, the Court need not address the issue of whether the automatic state prevents the attachment of Appellant's liens to the preference proceeds.

**IT IS SO ORDERED.**